UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA MANTA,<br><br>Petitioner,<br>v.<br><br>MICHAEL CHERTOFF, Secretary of the Department of Homeland Security, et al.,<br><br>Respondents. | CASE NO. 06-CV-1568 W (WMC)<br><br>**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS** |

On August 4, 2006, Petitioner Christina Manta sought review of an order certifying her extradition to the Hellenic Republic of Greece. Because competent evidence supported Magistrate Judge Jan M. Adler's probable-cause determination, the court will **DISMISS** Manta's petition.

///
///
///
///

## I.   Factual Background & Legal Standards

Anyone detained in violation of the Constitution, laws, or treaties of the United States may petition for a writ of habeas corpus. 28 U.S.C. § 2241 (2000). By treaty, the United States government may arrest and detain citizens or resident aliens on request of a foreign government. To obtain a warrant, the United States Attorney files an extradition complaint specifying the charges and evidence. 18 U.S.C. § 3184 (2000); Blaxland v. Commonwealth Dir. of Pub. Prosecutions, 323 F.3d 1198, 1207 (9th Cir. 2003). If the magistrate concludes that the complaint meets the requirements—proper jurisdiction, validity of the treaty and an alleged offense that falls within its terms, and probable cause—the magistrate may grant the warrant and issue an order certifying the extradition. Zanazanian v. United States, 729 F.2d 624, 625–26 (9th Cir. 1984). After arrest, the Department of State makes the ultimate determination whether to extradite.

Consequently, an erroneous certification and arrest would lead to a detention in violation of the law. Thus, a detainee may challenge the order certifying the extradition by petitioning for a writ of habeas corpus. Habeas-corpus review of orders certifying an extradition encompasses three issues:

(1)   whether the magistrate had jurisdiction over the detainee;

(2)   whether the treaty was in force and the detainee's offense fell within its terms; and

(3)   whether any competent evidence supported the magistrate's probable-cause determination.

Van Duc Vo v. Benov, 447 F.3d 1235, 1240 (9th Cir. 2006).

The Government arrested Manta on June 28, 2005, one day after Judge Adler certified extradition on two counts of fraud. Judge Adler reviewed six pieces of evidence in support of the extradition complaint:

- an authenticated extradition request from Greece dated October 15, 1999;
- an authenticated extradition request from Greece dated December 27, 2002;
- a letter from the public prosecutor in Greece, including a sworn declaration;

1   •   an witness examination, taken under oath dated February 6, 2006;
2   •   a declaration from an FBI special agent dated February 21, 2006; and
3   •   another letter from the public prosecutor in Greece (which included a copy of the passport for Christina Manta, an order from the magistrate's council in Athens, Greece, and a complaint dated June 1, 1999).

Judge Adler considered the evidence in light of five charges, and concluded in favor of the government on two of them. Manta now seeks review of the order certifying her extradition.

## II.   Discussion

Manta challenges three aspects of Judge Adler's order. First, she argues that her offenses do not fulfill the condition of "dual criminality," as the treaty requires. Second, she argues that no competent evidence supported the magistrate's probable-cause determination as to her identity. Third, she argues that the magistrate improperly failed to exclude certain evidence in the probable-cause inquiry. The court rejects all three arguments.

**A.   Because both Greek and American law punish fraud by false pretenses, the offenses fall within the treaty's terms.**

Article I of the extradition treaty states that "surrender shall take place only upon such evidence of criminality, as according to the laws of the place where the fugitive . . . shall be found, would justify his apprehension and commitment for trial if the crime or offense had been there committed." Dual criminality requires that both statutes punish the same conduct—regardless of the name of the offense, its elements, or its scope. Emami v. United States District Court, 834 F.2d 1444, 1450 (9th Cir. 1987). The two crimes need not be identical. Rather, the "essential character" of the proscribed acts must be the same and the laws must be "substantially analogous." Theron v. United States Marshall, 832 F.2d 492, 496 (9th Cir. 1988).

1	Judge Adler considered arguments as to the dual criminality of two charges under
2	Greek law: (1) deceit from which it was provoked an especially important damage, in
3	continuation and by habit; and (2) fraud by profession and out of habit of particularly
4	great damage. Judge Adler reasoned that the conduct was "comparable" to the federal
5	crimes of mail and wire fraud. See 18 U.S.C. §§ 1341, 1343 (2000). (Order at 15.)
6	Judge Adler then reviewed the allegations and concluded that the "substantive conduct
7	that the Greek and American laws punish is functionally identical." (Order at 15.)

8	There, and here again, Manta suggests that the government has not shown
9	specific intent. (Pet. at 7.) She points out that criminal fraud, unlike civil fraud or
10	breach of contract, requires a *mens rea* of intent to defraud. She effectively disputes that
11	Judge Adler properly inferred the requisite *mens rea* from the circumstances of the
12	alleged transactions. In Oen Yin-Choy v. Robinson, 858 F.2d 1400, 1408 (9th Cir.
13	1988), however, the court analyzed the allegations against petitioner Yin-Choy for
14	probable cause that he knew certain loans were false and he intended to gain for himself
15	or another. The district court, though lacking direct evidence of Yin-Choy's knowledge
16	and intent, certified Yin-Choy's extradition. On appeal, the Ninth Circuit reasoned
17	that Yin-Choy's control over the loans and their suspicious character raised an inference
18	that he knew they were false. Oen Yin-Choy, 858 F.2d at 1408. In addition, the
19	structure and result of the loans raised an inference that he intended to gain from the
20	loans. Id.

21	The court is not convinced that Judge Ader had to find specific intent in this part
22	of his review because the dual-criminality doctrine compares the *laws* of both
23	jurisdictions—the "essential character" of the targeted conduct—not the *allegations*.
24	See Theron, 832 F.2d at 496; Oen Yin-Choy, 858 F.2d at 1408. Plainly, the essential
25	character of "deceit" and "fraud" resulting in damages generally resembles mail and wire
26	fraud, and that character includes the specific intent to deceive or defraud. See Oen
27	Yin-Choy, 858 F.2d at 1408. Stated differently, the laws of both jurisdictions seek to
28	punish the same basic kind of act: lying in order to obtain money or property from

1 another (the crime of fraud by false pretenses). By contrast, whether the *allegations in*
2 *the complaint at issue* give rise to an inference of intent would be relevant to the
3 probable-cause inquiry—as the court implicitly recognized in Oen Yin-Choy. Therefore,
4 the extradition complaint satisfies dual criminality.

Assuming that Manta wishes to challenge Judge Adler's probable-cause determination as to specific intent, the court also rejects her argument. Judge Adler properly inferred from the size of the transactions (large), the type of transactions (purported investments in real estate and stock), and other circumstances (she held herself out to be an independent expert, she boasted about too-good-to-be-true returns, she fled the country shortly thereafter) that Manta intended to deceive her victims. Judge Adler did not need "direct" evidence of Manta's intent (such as a statement from Manta herself), because he properly inferred specific intent from the structure and character of the transactions. See Oen Yin-Choy, 858 F.2d at 1408.

**B.   Competent evidence establishes probable cause to believe that Crystalla Kyriakidou is Christina Manta's alter ego.**

Identity is central to the probable-cause inquiry. In an alter ego case, the government bears the burden to show identity. Judge Adler concluded that the government met its burden to connect Crystalla Kyriakidou (the person wanted in Greece) and Christina Manta (the person held for extradition proceedings). Judge Adler relied on several pieces of evidence from a victim of the accused's fraud and his own comparison to a passport photo to establish probable cause. Further, Judge Adler set forth evidence from the prosecuting authorities in Greece, documentary evidence contradicting Manta's assertion that she had never used an alter ego, and testimonial evidence from Manta placing her in Greece in 1997—all of which he believed corroborated the government's theory of identity.

The court agrees. Dimitra Louis complained in 1999 that a "Christina Mantas" defrauded her. As Louis found out later, the perpetrator held a phony Greek passport

and departed for San Diego in December 1998. In February 2006, Louis stated under oath that Passport No. N464835, issued to "Christina Manta" on August 3, 1999, contained a photo of the woman who defrauded her. Judge Adler also saw the passport photo, and agreed that it looked like Manta.

The court cannot conclude that a fraud victim, who remembered the name "Christina Mantas" and met the perpetrator on numerous occasions, cannot reliably identify her simply because the fraud occurred seven years ago. Further, the physical resemblance—that Judge Adler himself observed—between the person in the passport photo and Manta corroborates the victim's allegations. Those identifications, along with other evidence suggesting that Manta has assumed an alter ego, amply supply probable cause to believe that Kyriakidou and Manta are the same person.

**C.    Judge Adler properly admitted the evidence he relied on.**

*1.    Neither the Treaty nor Ninth Circuit law requires sworn statements.*

Article XI of the extradition treaty provides as follows:

> If, however, the fugitive is merely charged with a crime, a duly authenticated copy of the warrant of arrest in the country where the crime was committed, and of the depositions upon which such warrant may have been issued, shall be produced, with such other evidence or proof as may be deemed competent in the case.

In treaties, though, the word "depositions" is used in a general sense: oral statements reduced to writing, as opposed to sworn, recorded statements. See, e.g., Zanazanian, 729 F.2d at 627. In Zanazanian, the Ninth Circuit concluded that the same word did not mean sworn statements for purposes of the United States–Sweden extradition treaty. There, as here, the extradition treaty did not otherwise require all statements to be under oath, and the court declined to find an implied requirement. Id.

Likewise, the court here concludes that the United States–Greece extradition treaty uses the word "depositions" in its general sense. See Zanazanian, 729 F.2d at 627. If Congress intended to require sworn testimony, it could have said so unambiguously.

1  Thus, the court respectfully disagrees with In re Extradition of Platko, 213 F. Supp. 2d
2  1229, 1238 (S.D. Cal. 2002).  Platko cites Black's Law Dictionary (1968 edition) to
3  establish that "deposition" means a "statement that is made under oath before an
4  examiner, commissioner or officer of the court."  But the current Black's Law Dictionary
5  entry conspicuously omits any mention of an oath, which supports the court's
6  conclusion: "A witness's out-of-court testimony that is reduced to writing (usu. by a
7  court reporter) for later use in court or for discovery purposes." Black's Law Dictionary
8  (8th ed. 2004).

9  Practically, the court sees no reason to impose what amounts to a heightened
10 standard of reliability on the depositions because the magistrate considers them
11 alongside "such other evidence or proof"—sworn or unsworn—"as may be deemed
12 competent in the case."  Treaty Art. XI.  Grammatically, too, the word "deposition"
13 appears in a list whose elements share one characteristic: that they support the
14 application for extradition, not that they are evidence adduced under penalty of perjury.
15 Here, Judge Adler carefully analyzed an order from the Magistrates' Council of Athens
16 (which included unsworn testimony from four witnesses) and Louis' unsworn complaint
17 and concluded they were reliable.  (Order at 29, 34.)  Therefore, the court declines to
18 circumvent Ninth Circuit law—which only requires properly authenticated documents,
19 not sworn statements, see Zanazanian, 729 F.2d at 627—with flimsy linguistic, practical,
20 and grammatical support.

22 **2.    *The Fourth Amendment permitted Judge Adler to consider hearsay and unsworn***
23    ***statements against Manta because they were authenticated.***

24 The Fourth Amendment "protects all persons from arbitrary arrests, including
25 persons arrested pursuant to treaties." Parretti v. United States, 122 F.3d 758, 764 (9th
26 Cir. 1997), withdrawn and appeal dismissed on other grounds, 143 F.3d 508 (9th Cir.
27 1998) (*en banc*).  Under the Fourth Amendment, "no Warrants shall issue, but upon
28 probable cause, supported by Oath or affirmation." U.S. Const. amend. IV.  18 U.S.C.

1  § 3184 permits a magistrate to issue both a provisional warrant, to bring the accused
2  before the court to hear the evidence against him, and a final warrant, to commit the
3  accused to prison until the foreign government requisitions the Secretary of State for
4  extradition. Because the magistrate issues a "warrant," however, the Fourth
5  Amendment constrains his authority under § 3184. See Parretti, 122 F.3d at 764.

6  In Parretti, the Ninth Circuit considered an extradition complaint sought *solely
7  on the basis of the existence of a French arrest warrant*. That is, the government's prima
8  facie case amounted to three allegations: (1) France had charged Parretti with various
9  crimes; (2) these crimes were extraditable offenses under the United States–France
10 treaty; and (3) France had properly requested Parretti's provisional arrest through
11 diplomatic and legal channels. Parretti, 122 F.3d at 761. The government did not even
12 provide a copy of the arrest warrant itself, let alone affidavits or other competent
13 evidence. Id. On these facts, the Ninth Circuit concluded that the provisional arrest
14 violated the Fourth Amendment.

15 In so doing, the court elaborated on two crucial principles that serve to
16 distinguish Parretti from this case. First, the court interpreted Yordi v. Nolte, 215 U.S.
17 227 (1909), as approving hearsay and unsworn evidence in an extradition complaint.
18 In Yordi, the Supreme Court echoed the statutory language of 18 U.S.C. § 3184 in
19 permitting the magistrate to consider "depositions, warrants, or other papers offered in
20 evidence." Yordi, 215 U.S. at 231. Second, the court reiterated the one necessary
21 condition for evidence used to support probable-cause findings: authentication. See 18
22 U.S.C. § 3190 (2000); Parretti, 122 F.3d at 775 (stating the standard as "properly and
23 legally authenticated so as to entitle them to be received as evidence of the criminality
24 of the person so apprehended, by the tribunals of the foreign country").

25 In short, the Parretti court concluded that "[t]he government presented no
26 affidavits, deposition testimony, *or other competent evidence* that could have provided
27 Judge Reichmann with a substantial basis for concluding that probable cause exist[ed]."
28 Parretti, 122 F.3d at 774 (emphasis added and internal quotations omitted). Here, by

1  contrast, the magistrate relied on ample competent evidence—including charging
2  documents, sworn and unsworn victim statements, and other factual evidence—to
3  conclude that a "substantial basis for concluding that probable cause exist[ed]." See
4  Parretti, 122 F.3d at 774.  The testimonial evidence need not be based on personal
5  knowledge, lest the court eviscerate the statutory and case law repeatedly affirming the
6  magistrate's prerogative to consider *other competent evidence*.  See Escobedo v. United
7  States, 623 F.2d 1098, 1102 (5th Cir. 1980) (permitting multiple hearsay in extradition
8  proceeding).  In short, Judge Adler properly rejected Parretti as controlling, not only
9  because the Ninth Circuit withdrew the opinion, but also because the government has
10 provided much more than a bare complaint alleging the existence of a foreign arrest
11 warrant for extraditable offenses.

12      Manta asks the court to expand the Fourth Amendment oath requirement to
13 encompass *all* testimonial evidence.  But the factual standard for warrants—probable
14 cause—does not control the admissibility of hearsay or other competent evidence,
15 provided it is "supported" *in some way* by an oath or affirmation.  By Manta's own
16 admission, hearsay may provide probable cause in a preliminary hearing, if it is otherwise
17 reliable. (Pet. at 15.)  Judge Adler deemed witness statements the Greek prosecutor
18 elicited during an investigation (Order at 26, 29) and the Louis complaint (Order at
19 31–34) "sufficiently reliable to be deemed competent."  The court wholeheartedly
20 agrees. If a police officer may effectively vouch for an informant's credibility, see Illinois
21 v. Gates, 462 U.S. 213, 238 (1983), so too may the United States vouch for a foreign
22 prosecutor's credibility, especially when plenty of evidence corroborates the prosecutor's
23 allegations.  Further, Manta has not argued here that Greek law required the
24 government to authenticate the evidence beyond its showing before Judge Adler.
25 Therefore, Manta has shown no basis for the requested relief.
26 ///
27 ///
28 ///

### III. Conclusion

For the foregoing reasons, the court hereby **DISMISSES** the petition for writ of habeas corpus.

**IT IS SO ORDERED.**

DATED: March 9, 2007

_____
Hon. Thomas J. Whelan
United States District Judge